Good morning, Your Honors. May it please the Court, Carrie DeVito for defendants and appellate Chester Weisman. Your Honors, the Court's Certificate of Appealability asked one question, whether Mr. Weisman's Second Amendment petition was timely filed. It was not timely filed under any statutory interpretation. That's not what this case is about. Mr. Weisman is seeking to have his claims determined on their merits through application of equitable tolling, specifically a claim of actual innocence under the Schlupp gateway. In Pace v. DeGiuliemo, which is a case the State cited to the Court last week, the U.S. Supreme Court was discussing the difference between the two. I'm not waiving it. As I interpreted it, the question was whether it was timely filed, without reference to whether it was statutorily timely filed or equitably timely filed. The argument is that equitably filed. Well, are you waiving the statutory argument? I have to, Your Honor. There's no way it's timely under a statutory interpretation. Well, I respectfully disagree. Under the law, and I've calculated it myself, under the current law, now the Supreme Court has granted cert on another case which may be changing that law. But I think probably the COA was issued because other judges disagreed with your position as well. Unfortunately, I'm doing Mr. Weisman a terrible disservice, Your Honor. I looked at this case and his various filings from a number of points of view, relation back and gap tolling and interval tolling, and now with the new Pace case, I'm sorry. I just don't see how it's timely filed. All right. I've got a preliminary threshold question, and that has to do with the notice of appeal. Was the notice of appeal filed timely in this case? Mr. Weisman filed a motion for an extension of time within which to file his notice of appeal. Right. And I don't find any grant of that extension. Is it because I'm missing a record someplace or what? There's nothing on the docket sheet that indicates that the extension was granted. Your Honor, I'm so sorry. I don't have that in front of me. I don't have my excerpts in front of me. I'm afraid I'm going to have to provide the Court the answer to that in a supplemental letter. Now, I do have a July 30th, 2003, order signed by Judge Levy and Judge Hawkins which deals with a petition for rehearing filed on July 2nd, which it was construed to be a motion for reconsideration, which presumably means that the appeal was dismissed. And, of course, we're not bound by a motions panel determination whether the issue is still open. Is there anything more you can say to help us on it? At this time, no. All right. Well, we'll look into it and see what the situation is. If the Court has a question about it, though, I'd be more than happy to provide supplemental briefing on that. Your Honor, to succeed on a claim of actual innocence and open the Schlupf gateway through equitable tolling, a Petitioner has to judge. Is it your view that simply reciting a claim of actual innocence is enough to toll? No, certainly not. Okay. Now, the case law requires that there be credible new evidence. And I think, in fact, the Schlupf standard is that it has to be evidence that persuades a court it cannot have confidence in the outcome of the trial, especially in light of the fact that there were non-harmless constitutional errors. In this case, the significant evidence that Mr. Wiseman presented were the affidavits of the witnesses either who were called at trial but did not testify in full to what his exculpatory defense was or his defense overall. And then also the affidavits of the witnesses who were never called at trial, which goes to his claim of ineffective assistance of counsel for not having called them in the first place. The district the State court that ruled on one of the first habeas petitions said these affidavits really added nothing. It was just more of what was testified to at trial. And I believe the magistrate judge in her report and recommendations agreed with that, and then the district court agreed with the magistrate judge, that these affidavits provided nothing but more of the same. In another case recently decided by the Sixth Circuit, which the State also cited to this Court, the Souter case, S-O-U-T-E-R, the court of appeal noted that new evidence that includes slight changes or evidence that includes slight changes can still be new evidence. And this is significantly at page 592 of that decision, 395F3rd at 592. They were discussing the testimony of an expert witness, and they said, if Dr. Coley has changed his expert opinion, the evidence itself has changed and can most certainly be characterized as new. By analogy, if an eyewitness subsequently remembered additional details, those new details would form the basis of new evidence. And that's Mr. Weissman's position here, that the affidavits of these witnesses not only elaborated on what was testified to at trial, but added just enough new detail to qualify those affidavits as new evidence. The Court may be aware from the brief, Mr. Weissman's claim in this case stretches back even before the alleged molestation occurred and goes to whether or not his wife, Luana, had a reason for wanting him out of the house and whether or not the San Bernardino Police Department had a reason to not fully investigate this case and not want to find exculpatory evidence on Mr. Weissman's behalf. That's what his Schlupp claim is based on. Affidavits of witnesses who can testify in greater detail to Luana's plot to want her husband out of the house, to want to get her hands on his money, and apparently other witnesses who can testify that the police officers in this case were vindictive and did not do their jobs in investigating the crime. Your Honors, the Court may also be aware of one of the claims in the opening brief is that the district court reached an erroneous finding when it said that the claim of actual innocence had not been raised until the traverse to the Second Amendment petition. In fact, claims of actual innocence were made by Mr. Weissman throughout the pendency of his State direct appeal and his State habeas corpus actions and were raised early on in the Second Amendment petition and were raised in prior Federal petitions he filed. He is an uneducated man. He reached the eighth grade. He went no further. He's been filing most of these things in pro se. He knows the talismanic phrase, actual innocence. He may not know very well what he has to demonstrate. In fact, his lack of knowledge about how to file a petition suggests why there were a total of 15 State and Federal petitions in this case. He seemed to feel at one point in time that he had to file separate petitions for each claim that he was raising. He didn't seem to know he should aggregate them together. But to the best of his ability, with no help, and as a pro se, and with an eighth grade education, he has raised that claim of actual innocence consistently and often, and he has substantiated it with new evidence by way of these affidavits. Counsel, you're down to about two minutes. You may reserve, or you may consume. I will. I'll reserve one minute. Judge Wardlaw, I'm very concerned about the fact that I may have overlooked a statutory tolling here. I have to tell you. Well, the COA asked you to authorize the one issue as to whether the petition was timely filed. I would have taken that as a hint. I did, Your Honor. I just, I don't understand. Is the court, is it a question of relationship? I don't think we can do anything about it now because you conceded it and waived it again here today. I don't see any way around that. Thank you, Your Honor. Thank you, Counsel. We will hear from the government. May it please the Court. William Wood, Deputy Attorney General, on behalf of Respondent. Our position addressing this case is that there are at least three reasons to affirm the district court's judgment. One being the district court correctly and did, correctly recognized and did not abuse its discretion in deciding not to consider the issue of actual innocence when it was presented to the court as an objection to the magistrate judge's judgment. The second is the district court also correctly concluded that the so-called evidence of innocence that was presented wasn't adequate to meet the standard, if the standard existed. And I've submitted to the court the Souter case, which is adverse in one respect that I'm going to speak about, but I think it illustrates the kind of case that might meet the standard of actual innocence as a gateway, but also illustrates why this case is not and comes up short. In this case, whatever could be said about the affidavit submitted by Mr. Wiseman is that it presents the court additional evidence which might impeach witnesses, but really does not go to the heart of the evidence against Mr. Wiseman. Counsel, what is your understanding of the record with respect to the timeliness of the notice of appeal in this case? I'm afraid I can't answer that question either, Your Honor. I looked back and saw the dates. I believe the extension was granted, but I may be confusing it with another case, and I'm sorry I just can't answer that question. I can tell you that with respect to the reconsideration motion that the motion was for COA in this court was initially denied, and then he submitted it. Which motion was denied? Motion for COA. Oh, COA. Okay. The COA was denied by the district court, initially denied by this court, and then motion for reconsideration. Okay, but the threshold question is whether the notice of appeal is filed, Tom. Yes. Yes, and that I can't tell you, other than I think that the extension request may have been granted. I just can't tell you for certain if that's true. At the state court trial, did the defendant claim that he was innocent as a defense? Well, he certainly denied that he committed the alleged molest. One could, I assume, in all circumstances, see that as a claim of innocence, but of course, his burden of trial is not to show that he's innocent, but to challenge prosecution's claims. Right. Did he testify? Yes, he did. The part about this I find troubling on the actual innocence is that Schlupf requires some evidence, but his claim is that the investigators threw away the evidence, so he's unable to provide evidence. He says they threw away, they didn't collect evidence, including DNA evidence, which would prove his innocence, so he doesn't have access to the DNA evidence, is what he's saying. That's not true. There was a molest kit taken on the victim the same day. Pardon me? A molest kit taken on the victim. Okay. There were swabs run. Her clothing that she was wearing, her underwear and her slip that she wore that night was collected. All of that was tested. It was not tested for DNA because it was not an available test at the time, but they did test for both amylase, which is an enzyme in saliva and in vaginal fluids, found amylase, but, pardon me, but because it is in both of those substances, the test results were simply inconclusive. They also found staining on her slip, and I believe the underwear, which was consistent with the lotion she said was rubbed on her. So the testing that was run was consistent with the claim. There was nothing there thrown away. He may, at one point he was complaining that the police or the defense counsel was challenging the police for failing to go into the bedroom where the second molest took place and taped the bed clothing, and that's the only thing I could think of that could be considered to have not been collected. But as far as I know, nothing has been thrown away unless it's past its time,  and, of course, California has a DNA statute which would permit Mr. Wiseman to seek to have DNA testing on this evidence. I'm not sure whether it would be exculpatory or not, but he has an out to go and look for that. Is there a time limit on that? On seeking the testing? Not to my knowledge. The statute's been in effect the last couple of years, been amended a couple of times. When I looked at it, it had some requirements as far as showing, but it did not have a time limit requirement. To my knowledge, it was not intended to be time limited. So have they ever, has the defense ever requested the testing, the more accurate testing? Not to my knowledge. Not to my knowledge. And that, again, is part of the weakness of the actual evidence in Mr. Wiseman's claim is that it really doesn't go to the heart of the fact that the victim was examined that same day. She was found to have suffered bruising in her vaginal areas consistent with her claims and not consistent with anything else. And like I say, the testing that was done was consistent with the description she gave of the offense. So there's nothing undermining any of that. There's simply additional evidence challenging credibility of witnesses, which itself is subject to challenge. And, again, I, the last point I believe that I would like to make is that my position is actual innocence is not a gateway. It was not crafted that way by Congress. It is not required by the suspension clause or anything else that I can think of. And without some reason to think that it is a gateway, that it doesn't function to excuse his untimely petition. I could go through the various positions of the suitor court in finding that, but the long and short of it is I think the analysis is faulty. It doesn't correctly analyze the negative implication that Congress's investment of the actual innocence as an exception to successive petitions where it simply took the Schlepp bars and the Schlepp exceptions and incorporated that. That, to me, clearly says Congress knew how to put an actual innocence claim into statute and did not do so here. There are a number of other things that are faulty about the reasoning, but one of the biggest problems is it's not clear for me, at least in the suitor case, whether it's supposed to be a part of equitable tolling or whether it simply stands out there by itself as a freestanding claim that, for some reason, excuses a period of limitation violation. In my judgment, neither of those support finding actual innocence. And unfortunately, with this still hanging out there and the courts-like suitor decision suggesting that it works, I think the district courts are going to be needlessly inundated with these kind of claims, needlessly have to have the courts and the magistrate judges look tediously through lengthy trial transcripts and new evidence just to see if it can come close. And it would be beneficial for this Court, to the district courts and to the magistrate judges to close that door and proceed with the way Congress had intended, which was to impose a one-year period of limitation with appropriate tolling for statutory and, as this Court has determined, equitable tolling when it's applicable. Roberts. Counsel, you familiar with the case of Chavez v. Lamarck? It was not cited by either party, but I was just curious. Sorry, off the top of my head, I did not say so. Okay. If there are no other questions, I will be happy to submit. No questions. Thank you. Mr. Vito, you have some reserved time. Yes. Thank you, Your Honor. Your Honor, I can't point to any evidence that the police officers actually destroyed, but at trial, apparently, both the officer Wright and Detective Blesinger, who were the investigating officers on this case, both admitted that all they did was collect from the crime scene the bath towel, the lotion bottle, the washcloth, and the slip. And then Detective Blesinger, during the defense's cross-examination, admitted that he arrested Mr. Weissman without any investigation on these claims. That appears in the record in Mr. Weissman's excerpt's record at pages 5 and 9. And what's significant about that is, apparently, there were quite a number of people in the house at the time this alleged molestation occurred. The defense case established that. They put these witnesses on at trial. The witnesses testified either that Mr. Weissman was sitting in the living room the whole time, did not follow his daughter into the bathroom, or if he followed his daughter into the bathroom, came out immediately after. It strikes me as being shoddy investigation for the police officers not to at least have taken statements from these witnesses. The only other point I wanted to make, Your Honor, is that although there is no express actual innocence exception written into the part of AEDPA that establishes a procedural bar for something like this, the Souter case recognized that and said that the fact that Congress did include actual innocence exceptions to the procedural bars on successive habeas petitions and evidentiary hearings does not mean, it does not give rise to a negative implication that the absence of an exception was intended as far as the tolling deadline goes. That's Souter 395F3rd and 598. And, of course, in the Pace decision last week, the U.S. Supreme Court assumed without deciding for purposes of a national, you know, rule, they assumed for purposes of the Pace case that equitable tolling could apply. That appears at footnote 8 of the Pace decision. Ginsburg. Unless you beat yourself up too much over this issue, I just want to tell you that my analysis as to timing relates to, depends on whether or not the 17 months between the 12-9-99 filing and the April 10, 2001 petition in the Superior Court and then in the Court of Appeal is reasonable. And I would, even if I were to consider that claim, I would feel that we would have to go back and look at the case of Chavez v. Lamarck, which the Supreme Court just granted cert on, and it's going to address the reasonableness of the time period. So I'm not going to predict what the Supreme Court will do, but I think the gap will probably be narrowed from what we've been applying. Thank you for letting me know that. All right. Thank you. Thank you, counsel. The case just argued will be submitted for decision, and the Court will adjourn. All rise. Hear ye, hear ye. All those having had business before this honorable court, the United States Court of Appeals for the Ninth Circuit shall now depart. The Court now stands adjourned.
judges: O'scannlain, Wardlaw, Whaley